CITY OF NASHVILLE *et al.* v. SNOW *et al.; et vice versa.*

Nos. 16294, 16319. SEPTEMBER 16, 1948. REHEARING DENIED OCTOBER 13, 1948.

*J. P. Knight* and *Jack Knight,* for plaintiffs in error.

*Langdale, Smith & Tillman* and *Fred L. Belcher,* contra.

CANDLER, Justice. On February 9, 1948, the City of Nashville adopted an ordinance concerning the use of its streets and alleys. Section one of the ordinance, among other things, made it a penal offense for any person, firm, or corporation to use its streets and alleys for gain or profit "in connection with the soliciting of business, processing, cleaning, taking orders for or picking up or delivering any merchandise, laundry or dry cleaning, goods, or other articles" until the city has first granted a permit to use them for such purpose. Section two of the ordinance expressly provided that it is not the intention of the city to establish and fix rules, regulations, restrictions or conditions upon com-

pliance with which it will grant such a permit, but that the city in all cases retains the right, within its discretion, to grant or refuse any application for such a privilege. Under the third section of the ordinance all applications for such a permit must be made in writing. On March 31, 1948, the city, with reference to the use of its streets and alleys, took this further action: "Be it hereby resolved and ordained by the Mayor and Council of the City of Nashville, Georgia, that: (1) In order for any person, firm, or corporation to obtain a permit from the City of Nashville, Georgia, for the purpose of using the streets of said city for soliciting, transporting, or collecting dry cleaning or laundry, for hire, or gain, said person, firm or corporation shall first obtain the special license as fixed upon said business or businesses by said city, and shall comply with all of the requirements, as set out in paragraph 2 of this ordinance, for obtaining said special license; (2) Any person, firm or corporation desiring to engage in the business of dry cleaning and pressing clothes and/or operating a laundry, or taking clothing for dry cleaning, pressing or laundering shall be issued a special license to carry on said business or businesses in said city upon complying with the following requirements: (a) Any person, firm or corporation operating a dry cleaning and/or pressing establishment shall pay a special license tax of $25: (b) Any person, firm or corporation operating a laundry or laundrying clothing shall pay a special license tax of $25; (c) If any person, firm or corporation, whether principal or agent, resident or non-resident, owns, controls, operates, carries on, and/or engages in said business in more than one locality, within a radius of seventy-five (75) miles of the City of Nashville, Georgia, the said applicant shall set out a schedule of charges for work similar in kind to that proposed to be carried on in the City of Nashville, Georgia, that is charged in each said locality wherein said applicant as principal or agent owns, controls, and operates, carries on, and/or engages in the business the applicant intends to carry on in said City of Nashville, Georgia; and the Mayor or Council of said City of Nashville, Georgia, shall from an inspection of such schedule of charges, determine whether the applicant intends to engage in unfair competition in said City of Nashville, Georgia, with any person, firm or corporation licensed or who may be licensed to engage in said

business in said city, and issue or decline to issue the license according to whether the question is determined in the negative or affirmative; (d) If said person, firm or corporation engages in or carries on any of the aforesaid businesses in the City of Nashville, Georgia, and removes or causes to be removed from the City of Nashville, Georgia, any article belonging to residents of the City of Nashville, Georgia, for the purpose of having the said article laundered, cleaned or dyed, before engaging in business in said City of Nashville, Georgia, or before removing any article belonging to residents of said city from the said City of Nashville, Georgia, shall be required to file with the clerk of the City of Nashville, Georgia, a bond in the sum of $2500 signed by a reliable surety company to indemnify any resident of said city against loss by reason of any damage to property or person caused by said person, firm or corporation so engaging in said business; (e) If said person, firm or corporation shall not be a resident of Berrien County, Georgia, an attorney in fact, with authority to accept service of suits and be sued in Berrien County, Georgia, shall be appointed by and for said person, firm or corporation, so that all persons, firms or corporations engaging in said businesses in said city may be subject to suit in Berrien County, Georgia; and (f) Any person, firm or corporation, or the agents and employees thereof, engaging in said business or businesses without having first obtained said special license shall be guilty of doing business without having obtained a license and shall be punished as provided in Section 99 of the Code of Ordinances of the City of Nashville, Georgia, of 1915."

Snow's Laundry & Dry Cleaning Company (a partnership composed of William A. Snow, Alfred Gardiner, Sidney Tidwell, and George Stelljes, all of Bibb County, Barney B. Ratliff and D. L. Bliss, of Chatham County, Joseph Sandefur, of Muscogee County, and D. L. Maddux, of Lowndes County), brought a suit in the Superior Court of Berrien County against the City of Nashville and its corporate officers for a declaratory judgment and certain equitable relief.

The petition, as amended, alleges that the plaintiff is engaged in a general laundry and dry-cleaning business in the City of Valdosta and the surrounding territory, including the City of Nashville. Its employees, driving trucks, call at the homes and

places of business of customers to pick up articles to be laundered and dry-cleaned, and to deliver articles previously picked up for that purpose. To render this service in the City of Nashville, it is necessary for the plaintiff to use the streets and alleys of the city. The plaintiff, although expressly denying the validity of the ordinance of February 9, 1948, in order to preserve its business and avoid irreparable injury thereto, made application to the City of Nashville for the special license required by the ordinance of March 31, 1948, and in compliance with section two of the latter ordinance tendered the fees due under subparagraphs (a) and (b), filed the schedule of charges required by subparagraph (c), offered to give the bond provided for by subparagraph (d), but declined to appoint an attorney in fact under subparagraph (e). The defendant city refused to grant the application and has notified the plaintiff of its intention to enforce its ordinances and to arrest the members, agents, and employees of the plaintiff and cause them to be fined or imprisoned, or both, unless the plaintiff complies with all of the terms and provisions of both of its ordinances. Such action by the defendant city will seriously hamper and interfere with the transaction of the plaintiff's business, will result in repeated criminal prosecutions, and will cause it to suffer irreparable injury. The ordinance of February 9, 1948, is invalid, void, and without legal effect because the city is without charter power or other authority to adopt it; it is arbitrary and unreasonable in that it seeks to limit the use of the streets and alleys of the city by those who are legally entitled to the unrestricted enjoyment thereof; and because it is in violation of stated provisions of the State and Federal Constitutions. Subparagraph (c) of section 2 of the ordinance of March 31, 1948, is null, void, and without binding effect because it is arbitrary and unreasonable, in that it requires the applicant for a special license to disclose the charges made for like services rendered in other localities within a given radius, this being a question about which the defendants can have no lawful interest or concern; the city is without charter power or other authority to enact it and the same is an ultra vires act, since the defendants have no right or power to regulate the business or activities of the plaintiff either inside or outside of the City of Nashville or to declare the same to be an unfair method of com-

petition; and because the condition furnishes no proper basis upon which the defendant city may determine whether or not the plaintiff is engaged in unfair competition. It is further alleged that subparagraph (e) of the same section of said ordinance of March 31, 1948, is null, void, and of no effect because it violates art. 6, sec. 14, par. 4 (Code, Ann. Supp., § 2-4904) of the Constitution of 1945, fixing the venue of civil actions against copartners; and further because it is arbitrary, unreasonable, and contrary to public policy, in that it requires the plaintiff, as a condition precedent to obtaining a license for the conduct of a lawful business, to waive the legal right which copartners have to be sued in the county where one or more of such partners reside.

Besides for process, the petition prayed that the court by declaratory judgment decree: (1) that the ordinance of February 9, 1948, is invalid and void in its entirety; (2) that subparagraphs (c) and (e) of section 2 of the ordinance of March 31, 1948, are invalid and void; (3) that the plaintiff is entitled to have a license for the conduct of its business in the City of Nashville, Georgia, upon complying with the provisions of subparagraphs (a), (b), and (d) of section 2 of the ordinance of March 31, 1948; (4) that the defendants be restrained, and after hearing enjoined, from arresting, molesting, or making charges against the individual members of the plaintiff partnership, its agents, and employees while engaged in the orderly conduct of the plaintiff's business in the defendant city; (5) that the court by appropriate order in the nature of a mandamus direct the defendants to issue to the plaintiff a license for the conduct of its business upon its compliance with the valid provisions of the ordinance of March 31, 1948; and (6) for general relief.

The defendants demurred generally to the petition as a whole, and renewed their demurrer to the petition as amended, upon the ground that its allegations were not sufficient to state a cause of action for any of the relief prayed. They also demurred generally and specially and moved to strike various paragraphs of the petition. Paragraph 10 of the petition, which alleges that subparagraph (c) of section 2 of the ordinance of March 31, 1948, is null, void, and without binding effect, was demurred to generally and specially upon these grounds: (a) it is not arbitrary and unreasonable in requiring the plaintiff to disclose

charges made by it for similar services rendered by it in localities within a radius of seventy-five miles of said city, where said schedule of charges is to be used by the city in determining whether or not the plaintiff intends to carry on unfair competition within the defendant city; (b) nowhere in said paragraph or elsewhere in the petition are there any allegations of fact showing that the defendants are attempting to regulate the plaintiff's business outside of the defendant city, and therefore said allegation, "that the defendants have no right or power to regulate the business or activities of your petitioner carried on outside of the City of Nashville," is a mere conclusion of the pleader; (c) there are no allegations of fact in said paragraph or elsewhere in the petition, showing that the defendants are attempting to regulate or control the prices charged by the plaintiff, and the allegation, "that the defendants are without power or authority to regulate or control the prices charged by your petitioner inside the City of Nashville or elsewhere," is a mere conclusion of the pleader; (d) said paragraph shows on its face that said subparagraph of said ordinance is not arbitrary and unreasonable, but that it is a valid exercise of its charter powers to license and regulate said business of the plaintiff; and (e) said subparagraph shows on its face that it is not an attempt to regulate the prices to be charged by the plaintiff for laundry and dry-cleaning services, but is a means of judging, as a condition precedent to the issuance of a license, whether the applicant is undertaking to engage in unfair competition.

The court sustained the demurrers to paragraph 10 of the petition, and overruled all other grounds of demurrer. To that part of the judgment overruling the demurrers the defendants excepted, and by cross-bill of exceptions the plaintiff excepted to the judgment in so far as it sustained any of the demurrers.

■ The case at bar was brought under our Declaratory Judgment Act (Ga. L. 1945, p. 137). It presents questions for determination under that act which have heretofore frequently come to this court for decision under then-existing rules of procedure and practice. As shown by our statement of facts, the trial judge overruled those grounds of the defendants' demurrer which challenged the sufficiency of the petition to state a cause of action for declaratory relief. The correctness of that ruling is one of

the questions now before us for decision, and we will dispose of it first because, as we see the record, all other questions raised necessarily will become moot if we hold that the court erred as to this one. In the instant case, the court is asked to declare one entire city ordinance, and two subsections of another ordinance, unconstitutional; declare that the plaintiff is entitled to a license to conduct its private business in the defendant city and upon its streets and alleys upon compliance with the provisions of subsections a, b, and d, of section 2, of the ordinance of March 31, 1948; enjoin the institution of threatened penal prosecutions under the attacked ordinances; and grant the writ of mandamus. Unless the petition states a cause of action for at least some of this relief, the court erred in its ruling complained of. The authorities, so far as we have been able to find, are in agreement that the courts will grant declaratory relief only when there exists between the parties an actual controversy ripe for judicial determination. Declaratory Judgments, Borchard, pp. 26-57; LaFollette v. Dammann, 220 Wis. 17 (264 N. W. 627, 103 A. L. R. 1089); Butler v. Ellis, 203 Ga. 683 (47 S. E. 2d, 861); Felton v. Chandler, 75 Ga. App. 354 (43 S. E. 2d, 742). As to when an actual controversy is ripe for declaratory relief, we find in Borchard on Declaratory Judgments (2d, ed.) p. 56, this statement of the rule: "In general, it may be said that the facts on which a legal decision is demanded must have accrued, for the principle of a declaratory judgment is that it declares the existing law on an existing state of facts. The danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events—and the prejudice to his position must be actual and genuine and not merely possible or remote." This, we think, is a correct statement of the rule, and nothing contained in our Declaratory Judgment Act alters it; nor do we impute to the legislature any intention to do so. Measured then by this rule, do the facts alleged in the present case show the existence of an actual controversy between the parties ripe for judicial determination in a proceeding of this character? We are not inclined to think so for these reasons:

(a) In Anderson on Declaratory Judgments, 28-29, § 8, it is declared: "Where a concrete issue is present, and there is a definite assertion of legal rights, and a positive legal duty with

respect thereto, which are denied by the adverse party, there is a justiciable controversy calling for the invocation of a declaratory judgment action. . . However, the controversy must have proceeded sufficiently, or have ripened to the extent, that it has progressed beyond the stage of a mere apprehension, or fear that the defendant may make some assertion adverse to the plaintiff's rights. Where no such claim has been made and the infraction of no such rights are menaced, the courts are scrupulously diligent to ascertain that if a declaration of relief is granted, it will end the controversy." In Caterpillar Tractor Co. *v.* International Harvester Co. (California) 106 Fed. 2d, 769, the court said: "Defendant's argument is, and in this we agree, that an actual controversy is not involved where a person merely apprehends or fears assertion of rights against him by another. 1 C. J. S., Actions, § 18, subd. 9, pp. 1030-1031; Borchard, pp. 36-40."

(*b*) The general rule is that a court under a declaratory judgment proceeding does not have the right to determine whether a statute or ordinance is, abstractly, valid or invalid. 16 Am. Jur. 298, § 26; Anderson, Declaratory Judgments, 1946 Cumulative Pocket Parts, p. 19, § 8; Hammontree *v.* Hawley, (Ohio App.) 57 N. E. 2d, 319. In the present case, the allegations of the petition do not show any effort on the part of the defendants to enforce the alleged unconstitutional ordinances in so far as the plaintiff is concerned, and it is well settled in this State that before a law or municipal ordinance can be attacked by any person on the ground of its unconstitutionality, he must show that its enforcement is an infringement upon his rights of person or property. *Reid* v. *Eatonton,* 80 *Ga.* 755 (6 S. E. 602); *Plumb* v. *Christie,* 103 *Ga.* 686 (30 S. E. 759, 42 L. R. A. 181); *Hazleton* v. *Atlanta,* 147 *Ga.* 208 (4) (93 S. E. 202). And neither a threat of arrest nor threats of repeated arrests amount to interference with person or property rights. *Paulk* v. *Sycamore,* 104 *Ga.* 24 (30 S. E. 417, 41 L. R. A. 772. 69 Am. St. R. 128).

(*c*) It is alleged that the plaintiff, in applying for permission to use the defendant city's streets and alleys in the conduct of its business, for reasons stated in the petition, declined to comply with one of the requirements for a special license, namely, the

appointment of an attorney in fact in Berrien County with authority to accept service of suits for the plaintiff and be sued in that county. This court has several times held that individuals do not have an inherent right to conduct their private business in the streets of a city. This is a privilege which the city may grant or withhold. And as a city can prohibit wholly or partially such use of its streets, if it sees fit to grant permission to individuals to conduct their private business in its streets, it may prescribe such terms and conditions as it sees fit, and individuals desiring to avail themselves of such permission must comply with its terms and conditions, whether they are reasonable or unreasonable. *Schlesinger* v. *Atlanta*, 161 *Ga.* 148 (129 S. E. 861); *Clem* v. *LaGrange*, 169 *Ga.* 51 (149 S. E. 638, 65 A. L. R. 1361); *Atlanta Veterans Transp. Inc.* v. *Jenkins*, 203 *Ga.* 457 (47 S. E. 2d, 324); *Rogers* v. *Carr*, 203 *Ga.* 594 (47 S. E. 2d, 813). And this is true whether the individual's business be principally conducted upon such streets, or whether the use thereof be only incidental but essential to the business. *Derst Baking Co.* v. *Savannah*, 180 *Ga.* 510 (179 S. E. 763).

(*d*) As a general rule, equity has no jurisdiction to enjoin prosecutions for criminal offenses; and prosecutions for violations of municipal ordinances, which are punishable by fine or imprisonment, are quasi-criminal in their nature, and come within the above rule. *Starnes* v. *Atlanta*, 139 *Ga.* 531 (77 S. E. 381). In the present case, as the petition shows, no arrest has been made. There has been no interference with either the person or property rights of the plaintiff. The petition is based upon a mere apprehension that the defendant city will undertake to enforce its ordinances, and the case therefore falls within the rule that a mere threat of injury to person or property rights will not authorize an injunction, as was announced by this court in *Cathcart Van & Storage Co.* v. *Atlanta*, 169 *Ga.* 791 (151 S. E. 489); *Southern Oil Stores* v. *Atlanta*, 177 *Ga.* 602 (170 S. E. 801); *Georgia Public Service Comm.* v. *Parcel Delivery Co.*, 177 *Ga.* 600 (170 S. E. 800); *National Linen Service Corp.* v. *Milledgeville*, 177 *Ga.* 826 (171 S. E. 568); *Howard* v. *Briarcliff Zoological Corp.*, 178 *Ga.* 595 (173 S. E. 391); *City of Douglas* v. *South Georgia Grocery Co.*, 178 *Ga.* 657 (174 S. E. 127); *Wallace* v. *Atlanta*, 200 *Ga.* 749 (38 S. E. 2d, 596); *Winchester* v.

*Gainesville,* 193 *Ga.* 33 (17 S. E. 2d, 66) ; *City of Atlanta* v. *Universal Film Exchanges,* 201 *Ga.* 463 (39 S. E. 2d, 882).

(e) In *Clein* v. *Kaplan,* 201 *Ga.* 396 (40 S. E. 2d, 133), we held that the office of a declaratory judgment is to declare rights, not to grant coercive relief. Adhering to that ruling, we now hold that the writ of mandamus is not relief which can be granted under our declaratory-judgment statute.

It therefore follows from what we have previously said in this opinion that the petition failed to state a cause of action for declaratory relief, and the trial judge should have sustained the demurrers challenging the petition on that ground. It was reversible error not to do so.

■ Since we have held in the preceding division that the petition stated no cause of action for declaratory relief, and should have been dismissed on demurrer for that reason, it becomes unnecessary to pass on the question presented by the cross-bill of exceptions.

*Judgment reversed on the main bill of exceptions. Cross-bill of exceptions dismissed. Wyatt and Groves, Justices, and Judge Moore concur. Duckworth, Chief Justice, Atkinson, Presiding Justice, and Head, Justice, dissent.*